Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Welch presiding along with Justice Moore and Justice Overstreet. First case this morning is number 5-19-0484 in re Marriage of Zuber. Arguing for the appellant, Matthew Zuber, is Brent Holmes. Arguing for the appellee, Amanda Zuber, is Madison Mulady Winter. Each side will have up to 15 minutes for your argument. The appellant will also have up to five minutes for rebuttal. You will see the digital timekeeping device on my screen. When time has expired, I will bang the gavel. Finally, please remember no photographs and only the clerk of the court is permitted to record these proceedings today. Are you ready to proceed now? I am, Your Honor. Okay, you may proceed. Thank you, Your Honor. May it please the court, counsel. My name is Brent Holmes. It's my privilege to represent Matthew Zuber in this appeal. A law professor many, many years ago when I was in law school said, you know, you have to be careful about focusing so much on the trees that you miss the big picture, the forest. And I think part of this case is that the court missed the big picture. This case was tried on September 24 and 27 in 2018. At that time, maintenance was calculated based upon gross incomes. That's how the parties argued it. Our petitioners, 56, set forth the calculations for making maintenance. But this judgment was not entered until February 5th of 2019 at a time when the legislature had changed the calculation of maintenance to go to a net income formula. And so without any input from the parties, the court used what she considered to be the appropriate net income calculation. But she did it wrong. At appendix page nine of that judgment, the court said that she was deducting the base housing allowance as an allotment. So inexplicably, she does not, as the Baylor case clearly mandates, she must include the base housing allowance or other military allotments that are not taxable income in reaching the correct amount of income for Amanda. And yet the judge did apparently use the base housing allowance in calculating child support. This is totally inconsistent and unsupportable and contrary to the statute. So using the wrong methodology, the judge comes up with a net income to Amanda of $3,743. She gets there by not adding the $3,777 of base housing allowance, a tax free income benefit. So she's getting free housing instead of having to pay a mortgage payment like Matthew does. And she also added in the child support. And then to get to Matthew's net income, she used his $1,863 monthly social security disability benefit, added in the social security dependency allotment for the four children, and added in the child support. So then she reaches a conclusion that says, well, he's getting more money than she is, and therefore he's not entitled to maintenance. The legislature and the act provides and mandates that the court calculate maintenance first without any consideration with regard to child support. Once that calculation is made, and assuming that maintenance is awarded, then when you go to calculate child support, and you use the income share, such as going to the website of HFS Housing and Family Services, you see there you plug in the amount of maintenance being received by Matthew, you deduct the amount of maintenance being paid by Amanda, you include the social security dependency allotment that the children get, and then you arrive at the correct child support figure. So what the court did was fundamentally flawed, contrary to the act, and as a matter of law, it is reversible error. And then stepping back and looking at the forest, we see that Amanda is a major in the Air Force. She was earning a gross of about $140,000 and change. Our petitioners 56, if you calculated the maintenance on the basis of gross income as the statute was in effect at the time of the hearing, we arrived at a figure of $3,148 a month that she should be paying, petitioners exhibit 56. On the other hand, Matthew was receiving social security disability payment of $1,863 per month, which would only be adjusted on an annual basis by the CPI figure. Even if you go to a net income methodology for calculating this, and as we showed you in some very detailed calculations at pages three, four and five of the reply brief, with her having lived at San Pedro being on base there at the time of the hearing, the maintenance calculation would arrive and reach a result of $2,814 a month. Counsel, are you asking the court to use, what is the law now? Net income? It is net income now, your honor. So when this is remanded, I believe that you would use the as it is currently in effect, which would be the net income figure. And so even using the net income figure, you have Amanda, even with the result of maintenance, $7,025 a month and Matthew $4,677 a month. So even with the maintenance, a man is receiving 50% more than Matthew is. Now, I think that the cases are very instructive in how you arrive at your conclusion with regard to indefinite maintenance. I think the Pearson case, the Vail case out of this court and the Stam case, the common thread in those cases, I believe is that indefinite maintenance should be, must be awarded to deny it is an abuse of discretion where you have circumstances where the spouse seeking maintenance is totally disabled as here or unemployable due to a debilitating disease. So long as the other spouse is earning sufficient income to be able to meet that spouse's needs and to pay maintenance. Here, Amanda is a major in the Air Force and she can retire in 20 years. She has a master's degree in electrical engineering. And when you look at these other factors, which is future earning capacity, the prospects for her career in the future versus Matthew, she is eligible to retire in now under four years, May of 2024 at age 44. And with that electrical engineering master's degree, with the 20 years of experience that had in the Air Force, she will be a highly marketable and sought after employee. And she can embark upon her second career in the private sector, probably making more money than she was making in the military. You look at the needs that the court was, and the court again, did not view the evidence correctly or objectively or in accordance with what the record shows. The judge said that Matthew on his financial affidavit was putting down excessive amounts. And one of the expenses she pointed to was the internet. I guess he shouldn't have the internet. Well, you know, the COVID-19 pandemic has taught us that with four children, and they have to be homeschooled or they have they're being home during a COVID-19 crisis, and the only education you can get is through the internet. My goodness, this is not a luxury. This is not an excessive expense. You go through his expense items. He's got a 2012 caravan, which basically has substantial mechanical issues, as he testified about. He lives in an old house, which needs ongoing and regular maintenance and repairs. There was nothing excessive about his financial affidavit. Counsel, did the court find that your client was employable? Or make any findings along those lines? No, to the contrary, she found exactly the opposite. She said, he is not employable. And then she used the phrase, at this time. So even the court recognized and concluded that he was not employable at this time. And clearly, when you receive social security disability, you have to be completely, totally disabled from any employment in the National Labor Market for which there is any reasonably stable job that you could hold. And one of the things that I would suggest in testing this is to say, okay, to test the objectivity of this result, why don't we switch the sexes? And now Matthew, now Amanda is the one who is on social security disability, and raising the four children, Matthew is a military officer, etc, etc. I think the answer is obvious. Now, as Your Honor pointed out, what if in the future, he becomes, there's some miracle, revolutionary treatment that can now remove and eliminate the chronic and intractable pain that he has. And now he is employable. Well, that's exactly what the act has provided under Section 510. You have the right to come in and revisit the issue of that indefinite maintenance, where there is a substantial change in circumstance. But under these circumstances, in this case, at this time, it was clearly a gross abuse of discretion to deny maintenance. I'd like to move on to the next issue, which is the military retirement. The majority of this military benefit is marital. Obviously, everything after the marriage will be non-marital. And when Amanda retires, we are simply suggesting that this court instruct the trial court that it provide a very simple provision that says, when Amanda retires from the military, she will apply for the military retirement benefits as soon as administratively possible. We're not saying when she should retire or that she has to retire. All we are saying is that when she makes that decision and she retires, she cannot, whatever motivation, whether it be spite toward her ex-spouse or whatever, intentionally refuse to apply for those benefits. And that could mean a matter of months or even years in which Matthew would not be receiving his share, his marital share of the military retirement benefits. Why have the looming prospect of future litigation on this one issue, when by a simple one sentence or one paragraph provision, you can eliminate all that? The other issue with regard to the military is we had suggested that she be provided a survivor benefit plan for a few dollars, a small amount of premium payment, just like life insurance in the act specifically provides for life insurance, that that be provided so that if something happened to her and her untimely death, then he would be receiving a survivor benefit. He is the first spouse. This is a priority and he's permanently disabled and he would be substantially disadvantaged if she were to pass away and he not have a survivor benefit or at least life insurance. And the court, of course, when not awarding maintenance, did not do that at all. I'd like to next turn to the issue of the eight weeks abatement of child support. This is completely contrary to Sawicki, in which the court said, you know, if you're getting extended visitation in the summertime, you don't use that as the opportunity to abate your child support because you're simply fulfilling a parental responsibility in having time with your children. And by the way, the spouse who is raising the children, those expenses continue while they're with you. Housing, clothing, transportation, school expenses, getting the wrong to abate that child support. And what is even worse is that the court's justification was to look at a temporary order and say, well, there is precedent for this. In other words, we were going to have a hearing on temporary child support and it would have cost a lot of money in attorney's fees, et cetera, et cetera. And we agree. Both parties agree. OK, we will abate it for four weeks, one month, one month, not eight weeks. And we had a specific provision. This is without prejudice for either party to argue any different provision at the final hearing. And yet the court used this as justification for saying the abatement must continue and it's going to be expanded. This will have a very chilling effect and deter parties from reaching temporary agreements because if they think that it's going to come back and bite them at the final hearing, why would they agree to that? Counsel, I understand your point there, but didn't the court back off that a little bit? I know you had a hearing on the motion to reconsider and there were some other reasons given about the expenses for Amanda as far as flying the kids back and forth and so forth. And it seemed like in the order on the motion to reconsider, the court backed off that position. Well, but the court didn't change the ruling. And it's clearly contrary to Sawicki and the ruling stands. It's wrong and it should be changed. Very briefly with regard to property, counsel for Amanda cited no Illinois rule of evidence provision, no case law, anything to support a Zestimate from a Zillow website or another hearsay document within the property. And yet the court relied on those. That's clearly there. Attorney's fees should have been awarded. Thank you, your honors. Counsel, ready to proceed for the appellate? Yes, your honor. Thank you, Madison, the lady winter. And I have the privilege to represent Amanda Zuber in this matter, your honor. Your honor, may it please the court and counsel. The appellant, Mr. Zuber contends that the trial court made errors on six fundamental issues in this case, a with standards of review, ranging from abuse of discretion to manifest weight of the evidence, as was alluded to by Mr. Holmes, a brief history. We had closing arguments in this and over four months later, the court issued its opinion in February of 2019. And that was a 16 page opinion. There was a post trial motion filed by Matt Zuber that was argued in June. And again, the court took it under advisement for over four months. All in all, the trial court had this matter under advisement for over eight months and has issued 20 pages of opinions. This court must uphold the trial court's judgment if there's any evidence to support it. And the trial court had 20 pages of judicial opinion, incorporating evidence. The trial court's opinion cannot be overturned simply because this court may disagree or might have ruled differently given the evidence. What about counsel? What about opposing counsel said yes, but when the court's looking at maintenance, well, actually, the court figured out child support first and then threw that back into the maintenance calculation. And that's just error. What's your response to that? Your Honor, first, the initial matter before we talk about gross income and net income and figures is whether or not Mr. Zuber was eligible for maintenance. He had a obligation to carry the burden to prove that he was even eligible for maintenance before we take all of that into consideration. And the trial court found that Mr. Matt Zuber was not eligible to receive maintenance. Based on what? Well, I believe that the court considered the income that he had. He had a, the court granted him rental properties and Mr. Zuber's testimony was that he was able to reinvest all of the proceeds from those rental properties back into the properties. Matt Zuber's testimony was that he was able to deposit the full amount of the children's social security allotment into savings accounts. Mr. Zuber received almost $60,000 a year in tax-free income between his social security benefits, the children's social security benefits, and his child support benefits. In addition to that, he received approximately $200,000 in marital retirement accounts, $100,000 in cash, and I believe that the trial court found that with all of those streams of revenue, two of which he's not even using, reinvesting in his real estate and depositing in savings accounts, he simply did not have the need for additional funds from Amanda. The spousal support awards, as this court knows, are discretionary. The trial court performed an exhaustive analysis and ascertained that he wasn't eligible, and by the same token, he wasn't eligible for the survivor benefit plan from the military. I believe the trial court also properly valued the real estate. Each party introduced evidence from the local assessor's office. Matt Zuber contends that it was permissible for the trial court to admit the assessor's valuation when he wanted to admit it, but that it was error for the trial court to admit the assessor's valuation when Amanda offered it. Matt Zuber's testimony at trial was inconsistent and evasive regarding these rental properties, their values, what he was doing with the funds. The trial court, as this court knows, is, as the trier of fact, is in the best position to make credibility determinations. As far as the summer parenting time and the abatement in support, I believe that this court recognizes that on the motion to reconsider, the trial court considered what was in the best interest of the children. The best interest of the children is that they see their mother as much as possible. She has considerable expenses traveling from California to Illinois every month, and then during summer and Christmas, bringing the children back to California with her. And those expenses are due to the unilateral decision of Mr. Zuber, Mr. Matt Zuber, to permanently relocate to Illinois. Matt Zuber's financial situation and needs were taken into account by the trial court, and the fact that he's got these two streams of income from the rental properties and the children's social security benefits that he's not using, yet we're here today because he claims that he needs more, and he needs it from Amanda. The, I believe the trial court properly found he didn't need additional funds in addition to those assets that he received in the dissolution and his annual tax-free income. It is true that the trial court said that some of his expenses on his financial affidavit were not credible. It should be noted that he didn't even include the dependency allotment that he receives for the children on his financial affidavit. He also listed $1,500 a month in legal fees. That was something the court specifically recognized that they didn't believe was credible or was going to continue after this case. It is certainly true that the internet has become a necessity. I remind the court that this was argued and decided in September of 2018. At that time, no one had yet even heard of COVID, so I don't want to give that up as a reason, but that's a side issue. The simple fact is that the trial court did not decide this case lightly. The trial court provided an extensive evaluation of the factors in their 20 pages worth of opinion. We argued this case or presented testimony on this case. The court took that all into consideration in determining that Mr. Zuber was not eligible for spousal support due to his other income streams. The court gave him the income-producing properties. The real estate was valued. A party may have the ability to value their own real estate. However, the court took into consideration the Zestimate as well as the assessor's values when both parties introduced them, and they used that to provide a value. Either party could have provided an appraisal or other evidence. This is the evidence that the court had, and I believe the court properly took it into consideration. The court, I believe, properly denied the survivor benefit plan. There was no order that Mr. and Mrs. Zuber, Amanda Zuber, provide spousal support, so their denial of the survivor benefit plan was proper. The court also denied contribution to attorney's fees after carefully considering the situation. The court made a provision in its initial opinion. The parties had several years of tax returns that they had not filed, and the court awarded or allotted those tax refunds to initially go to the party's attorneys to pay the party's attorney's bills. The standard for attorney's fees is that one party is well able to pay them, and the other parties would be severely financially compromised by having to pay their own attorney's fees. The court allocated marital assets, in this case, that being the tax refunds that the parties had not yet received, to paying the party's attorney's fees, so that matter was provided for. The funds that were sitting in a trust account were provided to pay Mr. Matt Zuber's attorney's fees, so I do not believe that it is error that the court did not then award him an additional sum of money to pay his attorney's fees. When, again, Mr. Holmes referenced the forest and the trees, and when you step back and look at the entire forest, Mr. Matt Zuber received considerable assets from this dissolution. As I've said, he received $100,000 in cash. He received a home that he had unilaterally purchased. Mr. Holmes brings up that this was an older home. It's important to note that this home was exclusively selected and purchased by Mr. Zuber right before this divorce was filed. He received a home. He received every marital vehicle except for one. He received $200,000 in retirement accounts, $100,000 in cash. He's got over $2,000 a month in child support, which is a considerable amount in this geographic region that we're in. His social security back pay, the children's social security back pay, as well as his monthly income from his social security benefits and the children's social security benefits. Counsel, but the court also relied upon certain calculations, did it not? And opposing counsel said yes, but, you know, a couple of these factors were just plain error. The housing allowance, figuring the child support in, and the maintenance calculation. So if the court looked at all that, but considered things that were not proper, then shouldn't this court reverse? Your Honor, I think that the, those were just small parts of what the trial court considered. Again, out of their 16-page opinion, four pages of those were devoted to maintenance and the factors. Because some of the numbers may not have been correct, or there may have been some error in the calculation. I don't believe that that changes the trial court's entire view that Mr. Zuber had considerable and ample assets, and he did not need this additional revenue stream. When again, he wasn't, he was able to save and reinvest the revenue streams that he already had. This was not a man that was relying on every dime that he was getting to survive. He is able to invest in real estate. He was able to put $1,000 a month into his savings account from the children's dependency allotments. Those are all the factors that the court considered, including the needs of the parties. Some of the court's numbers may not have been correct, but the overall forest was correct, and the court came to the correct decision despite miscounting some of the trees. These parties had, had at the time they started the marriage, the same educational level. Mr. Zuber had an opportunity to advance his education, and I believe that the evidence was that he took some college classes, but he did not complete his advanced degree. Matt Zuber worked during the course of the marriage, even after his automobile accident. His consistent testimony was that he was working through the pain, and what was a impediment to him maintaining full-time employment was his wife Amanda's military career. That impediment has been removed. There was no physical condition had worsened or changed between the time that he was able to maintain employment and the time of trial. He was able to work then, and there should be no reason why he's not able to work now. Yes, he has been adjudged to be disabled by the Social Security Administration. However, again, there's no evidence as to why he cannot work now, and that, I believe, is something else that the court considered. The court considered the fact that he has worked in the past, and he has worked since he was unfortunately in this debilitating automobile accident. He, the court also considered the child care duties of the parties, and the testimony of Mr. Zuber was that, although he helped get the children ready, there were always substitute caretakers. The children went to school. The children went to daycare. He would have loved, in his words, to be a stay-at-home father. However, he was not a stay-at-home father in the sense that he did not stay home with the children. They were always sent to substitute settings, whether it be school or daycare or otherwise, so he did not abandon any of his educational pursuits to take care of the children or to provide care for the children. Those are all the factors the court's considered, and I think that the big one is that Matthew, and the court's first point, is Matthew is receiving a significant amount of financial assets, including the three income-producing properties, as well as his Social Security allotment, the children's Social Security allotment, and a considerable amount of child support. So, for those reasons, we believe that the trial court's decision should be upheld. Thank you. Thank you, counsel. Rebuttal? You're on mute, counsel. All right, can you hear me now? Can you hear me? I can. Okay. Yes. I think that the court really hit the nail on the head. When you look at the entire picture here, and the court clearly used the wrong methodology, arrives at the wrong calculations on a very, probably the most important factor, which is the incomes of the parties and how you make the calculation. She did it wrong. She came up with the wrong result, and that's reversible error, and that infects every aspect of what the judge was looking at in allocating property, determining how this case should come out. You can't say, well, it's harmless error. It can't be harmless error. It was a central provision, a central part of the foundation for this entire opinion. Counsel makes statements about, well, he received most of the liquid assets. He received non-marital property, which, of course, he had to, and those essentially were retirement accounts that he can't read. By and large, the liquid accounts, marital accounts, went to Amanda. She received the entirety of her Roth IRA. And by the way, with regard to ability to pay maintenance and child support, throughout this entire separation, throughout the entire divorce, she continued to have $764 a month taken out of her paycheck and put into her Roth IRA to suggest that she can't afford or is unable to or that her lifestyle would be prejudiced and harmed by the award of maintenance is simply not supported by the evidence. To say that these rental properties, and they weren't properties that are acquired by Matthew, they were acquired by both of the parties. And these aren't fine properties. If you look at the tax returns that were introduced into evidence, Petitioners Exhibit 28 to 32, I think with the exception of one year, they always lost money. They were not income generators. This property in Paris that was apparently gifted to them by Amanda's mother is in such horrible condition that the city is condemning it and it needs to be torn down. With regard to the assessment, the valuation, Matthew gave his valuations as owners of these properties, knowing what they are, what they're worth, what condition they're in, etc, etc. He gave those opinions and he is competent to give those opinions. He did not introduce, assess valuation, say, well, accept this. But even for purposes of argument, you know, the other side has to make an objection. And if there's no objection made to evidence, the evidence comes in. We made proper objections to clearly erroneous evidence of a Zillow Zestimate and a Vigo County tax assessor document. Those objections were properly made, should have been sustained. The court committed reversible error in not sustaining the objections and counsel has not pointed to one provision of the Illinois Rules of Evidence or any case law that would allow that evidence to have come in. And yet, obviously, that was evidence that influenced the court's decision in material ways. Was it just a hearsay or was it also a foundation objection? It would be both. Yes, both. The counsel did not meet either of the criteria for that to allow that to come into evidence. Now, with regard to Matt being totally disabled from employment, let's keep that in perspective. Counsel obtained by agreement the entire Social Security file on Matthew. She knows what was in there. And the fact of the matter is, he had a very serious injury. He tried to work for a while. The injuries to his spine resulted in multiple surgeries. And as we unfortunately know in cases, sometimes those surgeries, instead of obtaining the hoped for result, actually result in worsening of the condition. He is left with intractable pain. He has to literally lay down for periods of time when he has that kind of pain. The pain medication that he takes, obviously, does not cut the pain. And he fights through it as best he can in trying to raise these four children. He is clearly totally disabled from Social Security disability, unless you truly are deserving of it. Thank you. Thank you, counsel. The case will be taken under advisement. You'll be notified in due course. You're excused.